**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KAREN CELESTINO-HORSEMAN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SIDNEY D. BENNETT, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 55A04-1111-CR-645 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MORGAN SUPERIOR COURT
The Honorable Christopher L. Burnham, Judge
Cause No. 55D02-1007-FC-196

**June 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Sidney Bennett appeals his conviction for Class C felony Child Molestation.[1]  Specifically, Bennett contends that the trial court abused its discretion in excluding certain evidence from trial and that the evidence is insufficient to support his conviction.  We affirm.

## FACTS AND PROCEDURAL HISTORY

At all times relevant to this appeal, A.G. was nine years old.  A.G. had known Bennett since she was two years old and had visited his home on a regular basis.  On June 7, 2010, Bennett contacted A.G.'s mother to inquire about spending the afternoon with A.G.  A.G. spent the afternoon helping Bennett with yard work and visiting a nearby creek to look for rocks.

After finishing the yard work, Bennett took A.G. into his bedroom.  Bennett, who was standing behind A.G., bent A.G. over a chair, put his hand up her shorts (on top of her underwear), and rubbed her buttocks for approximately five seconds.  Bennett told A.G. that he was checking her for ticks.  Bennett then lay down on his bed and positioned A.G. on top of him before again touching her buttocks and "lift[ing]" her shirt up and touching and rubbing her chest.  Tr. p. 65.  Bennett did not ask A.G. to touch him or remove any of his clothes.  After Bennett touched her chest, A.G. quickly moved away and Bennett got up and took a shower.

Bennett took A.G. to a cookout at his parents' home before taking A.G. home for the evening.  A.G. did not immediately tell her mother everything that had happened at Bennett's

---

[1]  Ind. Code § 35-42-4-9(A)(1) (2009).

home because she was sad and scared. Approximately two or three days later, A.G. told her mother and both her maternal and paternal grandmothers what had happened. A.G. later discussed the incident with a police officer and a representative of the Department of Child Services. Bennett subsequently gave a statement to police where he admitted to checking A.G. for ticks, but denied any wrongdoing. Bennett also wrote a fourteen page letter to the investigating officer in which he alleged that A.G. had become "sexualized." In this letter, Bennett stated that he believed it "natural to check for ticks in a 'hands on' kind of way." State's Ex. 14. Bennett also stated that he believed that "someone [had] taken inappropriate sexual liberties with [A.G.]" and that he believed that A.G. expected a sexual encounter with him while in his bedroom. State's Ex. 14.

On July 26, 2010, the State charged Bennett with Class C felony child molesting. On January 26, 2011, the State amended the charging information to include an allegation that Bennett was a habitual offender. The trial court conducted a bench trial on September 31, 2011. At trial, A.G. testified that she had had her hair checked for ticks before but never under her clothes. A.G. further testified that this time, however, Bennett did not check A.G.'s hair or brush off A.G.'s arms or legs. Bennett admitted that while he thought it proper to check for ticks in a "hands on" manner, he would not check his seven-year-old granddaughter for ticks in a private area. Following trial, the trial court found Bennett guilty as charged. The trial court also found that Bennett was a habitual offender. On October 27, 2011, the trial court sentenced Bennett to a term of six years for the Class C felony child molesting conviction, enhanced by a term of eight years for the determination that Bennett

3

was a habitual offender.  This appeal follows.

## DISCUSSION AND DECISION

Bennett contends that the trial court abused its discretion in excluding certain evidence and that the evidence is insufficient to sustain his conviction.

## I.  Admission of Evidence

Bennett contends that the trial court abused its discretion in excluding certain circumstantial evidence which was allegedly relevant to his defense at trial.  Specifically, he argues that the trial court should have admitted certain circumstantial evidence allegedly relating to whether A.G.'s testimony was coached and whether A.G. was "sexualized." Appellant's Br. p. 23.

> When ruling on the admissibility of evidence, the trial court is afforded broad discretion, and Indiana appellate courts will only reverse the ruling upon a showing of abuse of discretion. *Smoote v. State*, 708 N.E.2d 1, 3 (Ind. 1999). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court.  *Stone v. State*, 536 N.E.2d 534, 538 (Ind. Ct. App. 1989), *trans. denied*.

*Gibson v. State*, 733 N.E.2d 945, 951 (Ind. Ct. App. 2000).

> Indiana Rule of Evidence 402 provides that:

> All *relevant* evidence is admissible, except as otherwise provide by the United States or Indiana constitutions, by statute not in conflict with these rules, by these rules or by other rules applicable in the courts of this State. *Evidence which is not relevant is not admissible*.

(Emphases added).  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Ind. R. Evid. 401.

4

## A. Potential Evidence of Coaching

Bennett claims that the trial court abused its discretion in excluding testimony which he argues could potentially have supported his claim that A.G.'s testimony may have been coached. At trial, Bennett attempted to testify about an incident involving A.G.'s mother's sometime boyfriend, Nick Brummett. Bennett testified that prior to the incident in question, Brummett, who had lived with Bennett at some point, broke into Bennett's house and beat Bennett. Bennett testified that Brummett was charged with a felony, but pled guilty to a misdemeanor approximately a few weeks before the incident with A.G. occurred. A.G.'s mother and Brummett were not together at the time the incident occurred, and Bennett's own testimony indicated that A.G.'s mother was dating someone else at the time.

While Bennett was testifying about the incident involving himself and Brummett, the trial court questioned its relevancy. In response to the trial court's question, Bennett's counsel replied as follows: "Well, Judge, for whatever it's worth, Mr. Bennett believes that … that [A.G.] may well have been put up … to this by…." Tr. pp. 156-57. The trial court instructed Bennett's trial counsel to move on to evidence relevant to whether A.G.'s evidence was coached. Bennett testified that A.G.'s mother may have coached A.G.'s testimony because he had considered aiding A.G.'s paternal grandmother in a potential future bid to gain custody of A.G., but did not present any evidence of coaching relating to Brummett.

On appeal, Bennett does not explain what relevant evidence was excluded by the trial court when the court instructed Bennett's counsel to present evidence relating to Bennett's claim that A.G.'s testimony might have been coached. The trial court did not deny Bennett

5

the opportunity to present evidence relating to whether A.G.'s testimony might have been coached, but, rather, limited Bennett's references to an incident involving his beating by another man long before the events in question which was linked to the current events, if at all, by speculation only. As such, we cannot conclude that the trial court abused its discretion in this regard.

## B. Evidence Relating to Whether A.G. was "Sexualized"

Bennett also argues that the trial court abused its discretion in excluding certain evidence that Bennett argued would support his claim that A.G. was "sexualized." Bennett claims that the trial court abused its discretion because it would only allow him to testify as to what he "had directly seen without recognizing that circumstantial evidence would also form the basis of [his] opinion." Appellant's Br. p. 14. The State, for its part, argues that the trial court acted within its discretion because any observations that had allegedly been relayed to Bennett by some unknown person would amount to inadmissible hearsay.

In his fourteen page letter to the investigating officer, Bennett stated that he believed that "someone [had] taken inappropriate sexual liberties with [A.G.]" and that he believed that A.G. expected a sexual encounter with him while in his bedroom. State's Ex. 14. Bennett did not provide any information in this letter relating to why he believed that someone had engaged in inappropriate sexual behavior with A.G. or why she would have expected a sexual encounter with him on the day in question. When questioned by the court about his belief that A.G. had become "sexualized," Bennett engaged in the following exchange:

6

Court:     What makes you believe that, sir?

Bennett:   Well, she went from being a young … little young girl, naïve, let's say, seemingly naïve about life and … intimacy, to being one who was knowledgeable and that …

Court:     How would you know that, sir?

Bennett:   I … I can't read her mind but being around her and seeing … seeing how she was makes me believe without a doubt that she was knowledgeable of … of the act required to procreate.  Not necessarily in those terms, of course.

Court:     She was nine years old.

Bennett:   That's right.  It's way too young.  And …

Court:     And what specific acts did you observe that made you believe that?

Bennett:   Well, there's … if you'll allow me to expand on it.

Court:     Get to the point quickly.

Bennett:   Okay.  She was observed behind the couch at her mother's home with various …

Court:     Did you observe her?

Bennett:   I did not.  This is …

Court:     Then I don't want to hear about it.  I want to know what you saw that made you believe that this was a nine-year-old sexualized child.

Bennett:   I don't know if I could … if I have a certain thing.  I'm … I'm sorry.  Perhaps.

Tr. pp. 172-73.  Bennett could not point to any action of A.G. that he had witnessed that would tend to indicate that A.G. had become "sexualized" but, rather, attempted to testify about an out-of-court statement by some unknown individual regarding his or her alleged observation of A.G.

The State claims that the trial court properly excluded Bennett's testimony about the out-of-court statement by the unknown individual because the statement was inadmissible hearsay.  Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. *Boatner v. State*, 934 N.E.2d 184, 186 (Ind. Ct. App. 2010) (citing *Jones v. State*, 800 N.E.2d 624, 627-28 (Ind. Ct. App. 2003)); *see also* Ind. Evidence Rule 801(c).  As a

7

general rule, hearsay evidence is inadmissible. *Id.* (citing *Jones*, 800 N.E.2d at 627-28); *see also* Ind. Evidence Rule 802.

Bennett argues that the statement was not inadmissible hearsay because it was not offered to prove that A.G. was "sexualized" but rather to explain why he believed that A.G. was "sexualized." However, Bennett's belief as to whether A.G. was "sexualized" is ultimately only relevant to prove the truth of the matter asserted, namely that A.G. was indeed sexualized and therefore prone to misinterpret Bennett's actions. Bennett could provide no personal knowledge of any act by A.G. that would support his claim that A.G. had become "sexualized." Bennett's only support for this contention was an out-of-court statement by an unknown person regarding that person's observation which is class inadmissible hearsay. The second-hand nature of Bennett's testimony about the out-of-court statement of some unknown individual makes Bennett's testimony classic inadmissible hearsay. As such, we conclude that the trial court acted within its discretion in excluding Bennett's testimony regarding the out-of-court statement from trial.

## II. Sufficiency of the Evidence

Bennett next contends that the evidence is insufficient to sustain his conviction for Class C felony child molesting. In making this contention, Bennett argues that the evidence is insufficient to prove beyond a reasonable doubt that he intended to satisfy his sexual desires by touching A.G. Specifically, Bennett argues that his statements to the investigating officer were consistent and do not demonstrate any intent to satisfy a sexual desire, that inconsistencies exist between A.G.'s prior statements and her trial testimony such that A.G.

8

could not be believed, and that A.G. was a troubled child who was exposed to sex in her home. For its part, the State argues that the evidence was sufficient to prove beyond a reasonable doubt that Bennett intended to satisfy a sexual desire by touching A.G.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction.… The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "[I]t is for the trier of fact to reject a defendant's version of what happened, to determine all inferences arising from the evidence, and to decide which witnesses to believe." *Holeton v. State*, 853 N.E.2d 539, 541 (Ind. Ct. App. 2006). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

Indiana Code section 35-42-4-3(b) provides as follows:

> A person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony.

Thus, in order to prove that Bennett committed child molestation in violation of Indiana Code section 35-42-4-3(b), the State was required to prove that Bennett fondled or touched A.G., who was under the age of fourteen, with the intent to arouse or satisfy either his or A.G.'s sexual desires.

> The intent to arouse or satisfy the sexual desires of the child or the older

person may be established by circumstantial evidence and may be inferred "from the actor's conduct and the natural and usual sequence to which such conduct usually points." *Nuerge v. State*, 677 N.E.2d 1043, 1048 (Ind. Ct. App. 1997). Mere touching is insufficient to constitute the crime. *Markiton v. State*, 236 Ind. 232, 235-36, 139 N.E.2d 440, 441 (1957).

*Kanady v. State*, 810 N.E.2d 1068, 1069-70 (Ind. Ct. App. 2004).

In *Kanady*, we determined that there was circumstantial evidence of Kanady's intent to gratify his sexual desires. 810 N.E.2d at 1070-71. The evidence demonstrated that Kanady touched his twelve-year-old victim "an inch into her panties" on one occasion and "on the skin of her breast" on another occasion. *Id*. at 1069. Both times, Kanady's victim pushed him away. *Id*. After the second incident, Kanady apologized to his victim "for the way [he had] been treating [her] like [she] was his girlfriend" and stated that he was "sorry for the way he had acted." *Id*. In addition, the victim's mother testified that Kanady "would joke about [the victim's] breasts getting bigger." *Id*. at 1070. On appeal, this court concluded that "the two instances of inappropriate touching, in light of Kanady's statements, [were] sufficient to permit the factfinder to reasonably infer that Kanady intended sexual arousal and therefore to find the intent element proven beyond a reasonable doubt." *Id*.

Here, the evidence supporting the trial court's judgment supports the inference that Bennett twice touched nine-year-old A.G. in a manner which was intended to satisfy his sexual desires. The record reveals that just prior to both touchings, Bennett situated A.G. in a position that made it easy for him to fondle her. In the first incident, Bennett bent A.G. over a chair before touching and rubbing her buttocks. Bennett, who was standing behind A.G., bent her "straight over," put his hand up A.G.'s shorts (on top of her underwear), and rubbed

10

her buttocks for approximately five seconds. In the second incident, Bennett lay down on his bed and positioned A.G. on top of him before again touching her buttocks and "lift[ing]" her shirt up and touching and rubbing her chest. Tr. p. 65. After touching A.G., Bennett got up and took a shower.

Bennett claims that the above-stated evidence is insufficient to support an inference that he intended to satisfy his sexual desires, and argues that there was nothing sexual about the touching as he was merely checking A.G. for ticks. In a fourteen page letter to the investigating officer, Bennett stated that he believed it "natural to check for ticks in a 'hands on' kind of way." State's Ex. 14. Bennett, however, admitted at trial that he would not check his seven-year-old granddaughter for ticks in a private area, suggesting that he knew that such touching would be inappropriate. Moreover, A.G. testified that Bennett did not rub her arms or legs or check her hair as would likely be done if one were indeed checking for ticks.

Given Bennett's efforts to "check for ticks" in A.G.'s private areas only, and not in more logical places like her hair, together with his concession that such touching would be inappropriate in the context of other young children, the trial court was within its discretion to reasonably infer that Bennett intended to satisfy his sexual desires. As such, we conclude that the evidence is sufficient to find that the State proved the intent element beyond a reasonable doubt.[2] Bennett's argument to the contrary effectively amounts to an invitation

---

[2] Having concluded that the evidence was sufficient to prove the intent element beyond a reasonable doubt, we further conclude that Bennett's claim that his conviction violated his constitutional rights because the State failed to prove each element beyond a reasonable doubt is meritless.

for this court to reweigh the evidence, which, again, we will not do. *See Stewart*, 768 N.E.2d at 435.

Furthermore, to the extent that Bennett claims that inconsistencies exist between A.G.'s prior statements and trial testimony such that her testimony should be disregarded by the trial court, we disagree. In support of his claim, Bennett points to two alleged inconsistencies in A.G.'s prior statements and her trial testimony. Bennett points to A.G.'s allegedly inconsistent statements regarding whether a tick was found in her hair after leaving Bennett's parent's home and whether the touching occurred in the living room or bedroom of Bennett's home. During trial, Bennett also highlighted an alleged discrepancy about whether A.G. brushed her hair after the touching. The trial court apparently determined that it was irrelevant whether A.G. had brushed her hair after the touching occurred or if a tick was later discovered in A.G.'s hair, and heard evidence that Bennett often entertained people in his bedroom as one might normally do in a living room. All in all, the trial court determined that A.G.'s testimony was credible. Again, it is for the trier of fact to decide which witnesses to believe, and we will not disturb the trial court's finding in this regard. *See Holeton*, 853 N.E.2d at 541.

In sum, having concluded that the trial court acted within its discretion in excluding certain allegedly circumstantial evidence proffered by Bennett and that the evidence is sufficient to sustain Bennett's conviction for Class C felony child molestation, we affirm the judgment of the trial court.

The judgment of the trial court is affirmed.

VAIDIK, J., and CRONE, J., concur.