**Dale Roger STEWART, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 45S00–0011–CR–639.**

Supreme Court of Indiana.

May 24, 2002.

Mark A. Bates, Appellate Public Defender, Crown Point, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

RUCKER, Justice.

After a trial by jury, Dale Roger Stewart was found guilty of child molesting as a Class A felony. He also was adjudged a habitual offender. The trial court sentenced him to ·fifty years for the child molesting conviction enhanced by twenty years for the habitual offender adjudication. In this direct appeal, Stewart contends the evidence is not sufficient to sustain the conviction. We disagree and therefore affirm.

### Facts

The facts most favorable to the verdict show that forty-six-year-old Stewart was a family friend of Z.D.'s parents. Beginning in August 1998, Stewart visited Z.D.'s home nearly every weekend and spent the night on several occasions. During these visits, Stewart played various video and board games with Z.D., sometimes into the early morning hours. He would often bring Z.D. gifts, including candy. The then eight-year-old Z.D. and his twelve-year-old sister often visited the home of Sally Schlink, a neighbor. Schlink's two children were approximately the same ages as Z.D. and his sister. Schlink met Stewart through Z.D.'s family, and Stewart would often visit the Schlink home while Z.D. was present. Stewart spent most of these visits playing with the children, especially Z.D. In December 1998, Stewart and the children were playing together at the Schlink home. At some point Stewart and Z.D. went into a bedroom and closed the door. The two emerged shortly thereafter. After the

children began teasing each other about "French kissing," Stewart left the house. R. at 90.

Stewart lived in Mishawaka and had been recently released on parole after serving a period of incarceration for a child molesting conviction. Sometime shortly after the Schlink home incident, he was arrested for an unrelated parole violation and detained in the St. Joseph County jail. During an interview with his parole officer, Pamela Frederick, Stewart admitted to an "inappropriate touching" of Z.D. R. at 141. Officer Frederick notified the Lake Station Police Department, which assigned detective Ruth Smith to investigate the matter. Detective Smith talked to Z.D., who told her that Stewart touched him in his "private area"; "French kissed" him; put his mouth on his "private parts"; and tried to put his "private area" into his "butt." R. at 162. Detective Smith then interviewed Stewart about the allegations. Stewart denied "French kissing" Z.D. and claimed that any touching in the "private area" was accidental. R. at 157, 158. Stewart concluded the interview by stating, "I don't even want to argue the situation. I want to plead guilty to this." R. at 160. .

At trial, then ten-year-old Z.D testified that while in the bedroom at the Schlink home, Stewart touched him in the "wrong spots," which he described as his "private spot" or "private part." R. at 115, 129.[1] He further stated that Stewart's "mouth touched me in the private spot." R. at 116. Z.D. also testified that similar incidents occurred in his bedroom both before and after the incident at the Schlink home.

According to Z.D., on those other occasions Stewart put "his mouth in, in the private part." R. at 119.

The jury found Stewart guilty of child molesting as a Class A felony and also adjudged him a habitual offender. Noting Stewart's six prior convictions for child molesting over the past nineteen years and characterizing him as an "incorrigible pedophile," Judge Murray sentenced Stewart to the maximum term of fifty years enhanced by twenty years for the habitual offender adjudication. R. at 287–88. This direct appeal followed.

### Discussion

■ Stewart contends the evidence presented at trial is insufficient to support his conviction for child molesting as a Class A felony. The standard for reviewing sufficiency of the evidence claims is well settled. We do not reweigh the evidence or assess the credibility of the witnesses. *Lacey v. State*, 755 N.E.2d 576, 578 (Ind. 2001). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

Child molesting under Indiana Code section 35–42–4–3 is divided into two subsections and encompasses the acts of sexual intercourse, deviate sexual conduct, and fondling or touching with the intent to arouse sexual desires. *Buck v. State*, 453 N.E.2d 993, 997 (Ind.1983). In this case, Stewart was charged with and convicted of

---

1. We take exception to the State's characterization of the evidence. The State declares Z.D. "testified that ... Stewart touched [his] penis." Br. of Appellee at 4. It then provides a record citation where this testimony supposedly may be found. *Id.* This particular characterization of Z.D.'s testimony appears multiple times in the State's brief along with a record citation. *See* Br. of Appellee at 2, 4, 5, 6. However, the record is clear that at no time did Z.D. use the word "penis" in his testimony. The meaning and inference of the words Z.D. actually used are at the heart of the sufficiency of evidence claim made in this appeal.

child molesting by deviate sexual conduct under subsection (a). Accordingly, the State was required to prove that Stewart (1) performed or submitted to (2) deviate sexual conduct (3) with a child under the age of fourteen. Ind.Code § 35–42–4–3(a). Deviate sexual conduct is defined as "an act involving: (1) a sex organ of one person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." I.C. § 35–41–1–9.

Stewart argues his conviction must be vacated because there was insufficient evidence of an act involving his mouth and Z.D.'s sex organ. More specifically, Stewart maintains that because the State never elicited testimony concerning what Z.D. meant by his use of the terms "private part" and "private spot" and because Z.D. testified that he was always clothed during these encounters, there was not enough evidence to sustain the conviction as charged.

 Stewart does not explain why he finds it significant that Z.D. was fully clothed during the encounters. We note, however, that it is too plain for further elaboration that a complete state of undress is not required for a child to be a victim of deviate sexual conduct as defined in Indiana Code section 35–41–1–9(1). As for Stewart's contention that there was no explanation of what was meant by Z.D.'s use of the terms "private part" or "private spot," we note that the uncorroborated testimony of a child victim is sufficient to support a conviction for child molesting. *Barger v. State,* 587 N.E.2d 1304, 1308 (Ind.1992). And this is so despite the child's limited sexual vocabulary or unfamiliarity with anatomical terms. *Butcher v. State,* 627 N.E.2d 855, 862 (Ind.Ct.App. 1994). The question here is whether there was sufficient evidence before the jury so that it could reach the conclusion that

when Z.D. referred to "private part" or "private spot" he was referring to a sexual organ. We believe there was such evidence. The State introduced Stewart's out-of-court written statement given to Detective Smith of the Lake Station Police Department. Relevant portions are as follows:

> Q: At any time did you touch [Z.D.s'] penis?
>
> A: No.
>
> Q: At any time did you have [Z.D.] touch your penis?
>
> A: No.
>
> Q: Did you touch [Z.D.'s] private area at any time?
>
> A: It's possible. There were times when [Z.D.] sat on my lap to play a computer game or another game and there was probably some kind of touch that was not intentional on my part.
>
> Q: Did [Z.D.] ever touch your private area accident[al]ly?
>
> A: He may have. He probably did.

R. at 154. At first glance this exchange seems to suggest the possibility that both Detective Smith and Stewart were making a distinction between "private area" and "penis." However, when specifically questioned why she varied from an anatomically correct phrase to the phrase "private area," the detective explained:

> The first question is a question that I, as [an] adult, would ask another adult knowing that he would know the anatomically correct names for the body parts. In the next question, did you touch [Z.D.'s] private area, those are the words [Z.D.] used when he was interviewed, private area, private parts.

 R. at 161. From this explanation, the jury very easily could have reached the conclusion that both adults knew that "private area" or "private part" referred to "penis." In like fashion, the jury reason-

ably could have reached the conclusion that Z.D. was making the identical reference.[2] It is true that the deputy prosecutor in this case would have been better advised to have used anatomically correct dolls in the presentation of the State's case in chief. However, we agree with the observation that the term "private part" "is generally understood as a commonplace designation of genital procreative organs." *Washington v. Dennison,* 72 Wash.2d 842, 435 P.2d 526, 529 (1967) (finding sufficient evidence to support a conviction for child molestation where victim testified that the defendant put his "private parts" into her "private parts").[3]

### Conclusion

The State presented sufficient evidence to support Stewart's conviction for child molesting as a Class A felony. Accordingly, we affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.

2. We note for example that in the widely-used Good–Touch/Bad–Touch® program, which is generally taught to children in pre-school through sixth grade, anatomically correct names are not used. Rather, the term "private parts" is used. This program defines the term "private parts" as "those covered by a two piece bathing suit for little girls, and by swim trunks for little boys." *See* Childhelp USA/Virginia, *Good Touch Bad Touch: A Body Safety Education, at* http://www.childhelpva.org/ secondarypages/touch.htm (last visited Apr. 17, 2002).

3. *Compare Shackelford v. State,* 622 N.E.2d 1340, 1344 (Ind.Ct.App.1993) (holding that the child victim's testimony that she kissed the defendant's "private parts" was not specific enough to prove the deviate sexual conduct variety of child molesting because the victim never defined the term "private parts").