**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DONALD J. BERGER**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

May 16 2012, 9:22 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHNNIE GIPSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1109-CR-435 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable John M. Marnocha, Judge
Cause No. 71D02-1012-FB-165

**May 16, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Johnnie Gipson appeals his convictions for two counts of Class B felony Sexual Misconduct with a Minor[1] and Class C felony Child Exploitation.[2] Specifically, Gipson contends that the evidence is insufficient to support his conviction because he allegedly did not know that the victim, N.B., was only fourteen years old. We affirm.

## FACTS AND PROCEDURAL HISTORY

N.B. was born on April 7, 1996. When N.B. was twelve years old, she created a public profile on the social networking website, MySpace. In this public profile, N.B. listed her age as twenty-three so that her older sister's friends and certain family members who were over the age of eighteen could contact her.

During the late spring and summer of 2010, N.B., who was fourteen at the time, lived with her father and paternal grandmother in South Bend. Gipson, who was thirty years old at the time, initiated contact with N.B. on MySpace during the early summer of 2010. Initially, N.B. ignored Gipson's messages, but subsequently began having conversations with Gipson over the instant messaging feature provided by MySpace.

At some point, Gipson and N.B. began having conversations over the telephone. During their first lengthy phone conversation, N.B. told Gipson that she was only fourteen years old. After N.B. told Gipson that she was only fourteen years old, Gipson "was kind of quiet for a minute, and was like, 'Nah, you're just playing.'" Tr. pp. 193-94. N.B. assured

---

[1] Ind. Code § 35-42-4-9 (2009).

[2] Ind. Code § 35-42-4-4 (2009).

Gipson that she was not "just playing" and that she was only fourteen years old. From that point forward, N.B. continued to tell Gipson that she was only fourteen years old. N.B. told Gipson about her school, including her information about her favorite classes, teachers, and a class trip to Six Flags. Gipson also contacted N.B.'s older sister through MySpace to ask about N.B. N.B.'s older sister did not reply at first, but in early June of 2010, replied to a post left by Gipson, informing him that N.B. "was fourteen, and that he should leave her alone." Tr. p. 318. In addition, N.B.'s family repeatedly told Gipson that N.B. was fourteen years old.

Despite being repeatedly told that N.B. was fourteen years old, Gipson continued to contact N.B. A few days after July 4, 2010, N.B. and Gipson met in person at a party held by one of N.B.'s neighbors. Gipson and N.B. left the party together and walked to an abandoned home near N.B.'s father's home. Gipson and N.B. sat on a neighbor's fence and Gipson began "feeling on" N.B. Tr. p. 189. Gipson would "kind of touch [N.B.], and then he'd do like, 'No.' And then he did it for a while, and he would be like, 'No.' And then he started kissing [N.B.] and then it was like, 'No.'" Tr. p. 188. Eventually, Gipson and N.B. moved to the fenced-in backyard of the abandoned home. While in the backyard, Gipson performed oral sex on N.B. and had N.B. "play with his penis." Tr. p. 190. Gipson and N.B. fell asleep for a short time, and upon waking, Gipson engaged N.B. in sexual intercourse. N.B. left shortly thereafter after receiving a telephone call from her Father.

Approximately a week and a half later, N.B. and a friend snuck out of her Father's home to meet Gipson. Gipson and the girls walked to a nearby store where Gipson

purchased drinks for himself and the girls before walking back to the abandoned home next to N.B.'s father's home. After sitting outside for a short time, Gipson went into the abandoned home through a bathroom window and unlocked the back door. Once inside the home, Gipson and N.B. went to the basement and had sex, leaving N.B.'s friend alone upstairs. N.B. later noticed that her friend had left the home and went to find her. N.B., her friend, and Gipson returned to N.B.'s father's home where they stayed until 5:00 a.m. Gipson ran away after N.B. woke her family to let her in the home.

At some point during July of 2010, N.B. stayed with Gipson for a few days after getting into an argument with her paternal grandmother. During one of the nights that N.B. stayed with Gipson, N.B. and Gipson took nude pictures of each other with N.B.'s camera. Gipson also recorded a video of himself and N.B. engaging in sexual intercourse with the camera.

Near the end of July, N.B.'s older sister accessed the camera and found the nude photographs of N.B. and Gipson and the video of N.B. and Gipson engaging in sexual intercourse. N.B.'s older sister notified the girls' mother who informed N.B.'s father about the pictures and the video. N.B.'s father contacted the police. The police told Gipson that N.B. was only fourteen years old and ordered him to stay away from N.B.'s father's home.

In early August, a few days after being confronted by the police, Gipson and N.B. engaged in sexual intercourse in the abandoned home near N.B.'s father's home. Towards the end of August, N.B.'s mother discovered Gipson hiding in N.B.'s closet at her mother's home in Elkhart. N.B.'s mother again contacted the police who reminded Gipson that N.B.

4

was fourteen years old and that "he was not to be around her." Tr. p. 365.

On August 20, 2010, Gipson was found hiding in N.B.'s closet at her father's home wearing only his underwear. Gipson fled after N.B.'s paternal grandmother told him that she was going to call the police. The police later found Gipson hiding in the garage of a nearby home.

Gipson and N.B. continued to engage in sexual activity in the abandoned home throughout the summer of 2010. N.B. estimated that she and Gipson had sexual intercourse on more than twenty occasions, and that Gipson performed oral sex on her four or five times. At some point early in their relationship, Gipson told N.B. "not to tell anybody, not to tell [her] dad" because "I can get locked up for this … I can get in trouble for this." Tr. p. 194. Later in their relationship, Gipson told N.B. that they could get married in either Arkansas or Kentucky because "you only had to be fourteen to get married, without parent consent" in those two states. Tr. p. 235. At some point, N.B. created a second MySpace account. She accurately listed her age as fourteen on this second account. Gipson was listed as a "friend" on N.B.'s second account and accessed the account to upload pictures of himself.

On December 1, 2010, the State charged Gipson with one count of Class B felony sexual misconduct with a minor, alleging that Gipson engaged in sexual intercourse with N.B. While detained on this charge, Gipson wrote multiple letters to N.B. and one letter to N.B.'s mother, in which he admitted that N.B. "honestly did tell me she was only 14yrs." State's Ex. 11a. On March 29, 2011, the State amended the charging information to include a second count of Class B felony sexual misconduct with a minor, alleging that Gipson

5

engaged in deviate sexual conduct with N.B. The amended charging information also alleged that Gipson committed Class C felony child exploitation and three counts of Class A misdemeanor invasion of privacy.

The trial court conducted a jury trial on June 21, 2011 through June 23, 2011. At the conclusion of trial, the jury determined that Gipson was guilty of two counts of Class B felony sexual misconduct with a minor and Class C felony child exploitation.[3] On August 10, 2011, the trial court sentenced Gipson to an aggregate term of twelve years of incarceration. This appeal follows.

## DISCUSSION AND DECISION

**Whether the Evidence is Sufficient to Sustain Gipson's Class B Felony Sexual Misconduct with a Minor and Class C Felony Child Exploitation Convictions**

Gipson contends that the evidence is insufficient to support his convictions for two counts of Class B felony sexual misconduct with a minor and Class C felony child exploitation. Specifically, Gipson claims that the evidence is insufficient to sustain his convictions because he did not know that N.B. was fourteen years old during the summer of 2010.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction.… The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

---

[3] The invasion of privacy charges were not tried before the jury. (Tr. 148) The record is unclear as to the disposition of these counts.

6

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). Inconsistencies in witness testimony go to the weight and credibility of the testimony, "the resolution of which is within the province of the trier of fact." *Jordan v. State*, 656 N.E.2d 816, 818 (Ind. 1995). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

### A. Class B Felony Sexual Misconduct with a Minor

In order to convict Gipson of Class B felony sexual misconduct with a minor, the State was required to prove that Gipson was over the age of twenty-one, and that he engaged in sexual intercourse or deviate sexual conduct with N.B., who was at least fourteen years old but under the age of sixteen. *See* Indiana Code § 35-42-4-99(a)(1). "'Sexual intercourse' means an act that includes any penetration of the female sex organ by the male sex organ." Indiana Code § 35-41-1-26 (2009), *re-codified effective July 1, 2012 at* Indiana Code § 35-31.5-2-302. "'Deviate sexual conduct' means an act involving: (1) a sex organ of one (1) person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." Indiana Code § 35-41-1-9 (2009), *re-codified effective July 1, 2012, at* Indiana Code § 35-31.5-2-94. Although the defendant's knowledge of the victim's age is not an element of the crime, *see Moon v. State*, 823 N.E.2d 710, 715 (Ind. Ct. App. 2005), *trans. denied*, "[i]t is a defense that the accused person reasonably believed that the child was at least sixteen (16) years of age at the time of the conduct." Ind. Code § 35-42-4-9(c) (2009).

Here, Gipson was charged with and convicted of two separate counts of Class B felony sexual misconduct with a minor. One count alleged that Gipson engaged in sexual intercourse with N.B., and the other that Gipson engaged in sexual deviate conduct with N.B. Gipson does not challenge the determination that he engaged in both sexual intercourse and sexual deviate conduct with N.B. Gipson effectively claims on appeal that the evidence was insufficient to negate his claim that he reasonably believed that N.B. was at least sixteen years old at the time he engaged in said conduct with N.B.

At trial, N.B. testified that she repeatedly told Gipson that she was fourteen years old. N.B. told Gipson that she was fourteen years old the first time she spoke to Gipson on the telephone, before even meeting Gipson in person. Likewise, N.B.'s older sister testified that in early June of 2010, she replied to a post that Gipson had left on N.B.'s MySpace page informing Gipson that N.B. was only fourteen years old.

Gipson continued to engage in a sexual relationship with N.B. even after being notified by N.B.'s family that N.B. was only fourteen years old. N.B.'s older sister testified that multiple family members repeatedly told Gipson that N.B. was only fourteen years old. The police were called on multiple occasions and each time told Gipson that N.B. was fourteen years old, to leave N.B.'s parents' homes, and to have no contact with N.B.

In addition, N.B. testified about conversations she had had with Gipson which demonstrated that Gipson knew that N.B. was only fourteen years old. N.B. told Gipson about school activities, including a class trip to Six Flags. At some point during their relationship, Gipson told N.B. not to tell her father about their relationship because he could

8

"get locked up for this … get in trouble for this." Tr. p. 194. In addition, during conversations about marriage, Gipson told N.B. that they could get married in Arkansas and Kentucky because "you only had to be fourteen to get married, without parent consent." Tr. p. 235. Furthermore, Gipson admitted in a letter to N.B.'s mother that N.B. "honestly did tell [him] she was only 14 [years old]." State's Ex. 11a.

In light of the overwhelming evidence that Gipson knew that N.B. was fourteen years old during the summer of 2010 when he and N.B. engaged in the sexual conduct, the jury, acting as the fact-finder, could reasonably conclude that Gipson knew that N.B. was fourteen years old at the time of the conduct, and that Gipson could not have reasonably believed that N.B. was at least sixteen years old when the sexual conduct took place. *See Drane*, 867 N.E.2d at 146-47. As such, the evidence is sufficient to sustain Gipson's convictions for Class B felony sexual misconduct with a minor.

## B. Class C Felony Child Exploitation

In order to convict Gipson of Class C felony child exploitation, the State was required to prove that Gipson "knowingly or intentionally: (1) manage[d], produce[d], sponsor[ed], present[ed], exhibit[ed], photograph[ed], film[ed], videotape[d], or create[d] a digitized image of any performance or incident that includes sexual conduct by a child under eighteen (18) years of age." Indiana Code section 35-42-4-4(b). Here, Gipson does not dispute that he used N.B.'s camera to take naked pictures of himself and N.B. and to record video of himself and N.B. engaging in sexual intercourse. Gipson only challenges the sufficiency of the evidence to prove that he knew that N.B. was under eighteen years of age when he took

9

naked photographs and recorded video of her and him during sexual intercourse.

Gipson again claims that the evidence demonstrates that he reasonably believed that N.B. was over the age of eighteen. We disagree, and, in light of the overwhelming evidence described above, conclude that the jury could reasonably find that Gipson knew that N.B. was fourteen years old at the time he committed the acts in question. *See Drane*, 867 N.E.2d at 146-47. As such, the evidence is sufficient to sustain Gipson's conviction for Class C felony child exploitation.

The judgment of the trial court is affirmed.

VAIDIK, J., and CRONE, J., concur.