Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 22 2012, 8:46 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KRISTIN A. MULHOLLAND**
Office of the Public Defender,
Appellate Division
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

MIKE HARMON, JR.,                    )
                                     )
    Appellant-Defendant,             )
                                     )
        vs.                          )    No. 45A02-1203-CR-256
                                     )
STATE OF INDIANA,                    )
                                     )
    Appellee-Plaintiff.              )

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Salvador Vasquez, Judge
Cause No. 45G01-1101-FC-3

**October 22, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Mike Harmon, Jr., appeals his conviction for Class B felony burglary.[1]  Specifically, Harmon contends that the evidence is insufficient to support his conviction.  We affirm.

## FACTS AND PROCEDURAL HISTORY

During the evening of January 4, 2011, Dominique Smith ("Dominique") was in his Gary apartment located across the street from the New Jerusalem Church of God and Christ ("the Church").  Dominique's grandfather, Pastor Lawrence Smith ("Pastor Smith"), had served as pastor of the Church for nearly thirty years and continued to preach at the Church on a regular basis.  While watching television, Dominique heard a loud noise that sounded like a knock at his door.  Dominique went down the back stairs and looked down the alley in an attempt to discover the source of the noise.  Dominique saw a man, who was subsequently identified as Harmon, attempting to break one of the Church's windows with either a rock or a brick.  Dominique saw Harmon enter the Church through the window after he was able to successfully break the window.  After watching Harmon enter the church, Dominique notified Pastor Smith of the break-in.

Dominique walked around to the front of the church to wait for Pastor Smith to arrive.  As Pastor Smith approached, Dominique went back around the side of the Church.  Dominique saw Harmon's legs hanging out of the window.  Pastor Smith also saw Harmon's legs hanging out of the window.  Dominique ordered Harmon to "Stop, don't move.  Don't go nowhere."  Tr. p. 14.  Harmon attempted to flee but was cornered by Pastor Smith's

---

[1]  Ind. Code § 35-43-2-1 (2010).

vehicle and detained by Dominique until police arrived.

Shortly after Dominique detained Harmon, Gary Police Officers Francis Peckler and David Finley arrived at the scene. Officer Finley secured Harmon while Officer Peckler, Pastor Smith's wife Theodora, and Dominique entered the Church. Upon entering the Church, Theodora noticed broken glass near the window through which Harmon had gained access to the Church. Theodora also saw that a piece of cardboard had been placed in the broken window. She further noticed that some of the furnishings had been rearranged and a stone statute depicting angels and a waterfall had been moved from its normal location and placed near the broken window. Dominique noticed that a keyboard and a public address system which were normally stored near the pulpit had been moved to near the broken window. In addition to pieces of broken glass laying near and a piece of cardboard placed in the broken window, Officer Peckler noticed what appeared to be a broken vase right below the broken window. Pastor Smith testified that while he could not remember specifically whether certain items were out of place when he entered the Church a few days after the break-in, he did remember that a gold flower pot had been moved.

Officers Finley and Peckler found two flashlights and two hand files in Harmon's jacket pocket at the time of his arrest. Both Officer Peckler and lead detective Officer Brian Farrow testified that in their experience as police officers, hand files and flashlights are items that are typically used during the course of a burglary when an individual is attempting to break into a structure and steal something.

On January 6, 2011, the State charged Harmon with Class C felony burglary and Class

3

B misdemeanor criminal mischief.  On February 4, 2011, the State amended the charging information to include an allegation that Harmon was a habitual offender.  The State again amended the charging information on July 26, 2011, adding a charge of Class B felony burglary.  On November 10, 2011, Harmon waived his right to a jury trial.

Following a bench trial, the trial court, acting as the fact-finder, found Harmon guilty of Class B felony burglary and Class B misdemeanor criminal mischief.[2]  Harmon stipulated that he was a habitual offender.  On January 5, 2012, the trial court imposed an aggregate twenty-year term of incarceration.  Harmon subsequently filed a motion to correct error, which was denied by the trial court on February 27, 2012.  This appeal follows.

## DISCUSSION AND DECISION

Harmon contends that the evidence is insufficient to support his conviction for Class B felony burglary.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict.  It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction.…  The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted).  "In essence, we assess only whether the verdict *could* be reached based on reasonable inference that may be drawn from the evidence presented." *Baker v. State*, 968

---

[2] The trial court also found Harmon guilty of Class C felony burglary, but did not enter a judgment of conviction of for this charge.

4

N.E.2d 227, 229 (Ind. 2012). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002). Inconsistencies in witness testimony go to the weight and credibility of the testimony, "the resolution of which is within the province of the trier of fact." *Jordan v. State*, 656 N.E.2d 816, 818 (Ind. 1995).

"Burglary is the breaking and entering of the building or structure of another person with the intent to commit a specific felony therein." *Baker*, 968 N.E.2d at 229; Ind. Code § 35-43-2-1. Burglary rises to the level of a Class B felony when the building or structure in question is used for religious worship. Ind. Code § 35-43-2-1. Thus, in order to convict Harmon of Class B felony burglary, the State was required to prove that Harmon broke and entered a structure used for religious worship with the intent to commit a felony in it. Ind. Code § 35-43-2-1.

In the instant matter, the State alleged that Harmon intended to commit the felony of theft upon entering the Church. Harmon concedes that there was sufficient evidence to prove that he broke and entered a structure used for religious worship, but claims that the evidence was insufficient to prove that he intended to commit a felony therein. He claims that the evidence only establishes that he entered and exited the Church through a broken window but not that he moved any property in a way that would envince an intent to commit theft.

As the Indiana Supreme Court has previously stated, "[b]urglars rarely announce their intentions at the moment of entry … and indeed many times there is no one around to hear them even if they were to do so." *Baker*, 968 N.E.2d at 229 (internal quotation and citations

5

omitted). "Hence, a burglar's intent to commit a specific felony at the time of the breaking and entering may be inferred from the circumstances." *Id*. at 229-30 (internal quotation omitted). "'Circumstantial evidence alone is sufficient to sustain a burglary conviction.'" *Id*. at 230 (quoting *Kidd v. State*, 530 N.E.2d 287, 287 (Ind. 1988).

> Evidence of intent "need not be insurmountable," [*Gilliam v. State*, 508 N.E.2d 1270, 1271 (Ind. 1987)], but there must be a "specific fact that provides a solid basis to support a reasonable inference that the defendant had the specific intent to commit a felony," [*Freshwater v. State*, 853 N.E.2d 941, 944 (Ind. 2006)]. The evidentiary inference pointing to the defendant's intent must be separate from the inference of the defendant's breaking and entering. [*Justice v. State*, 530 N.E.2d 295, 297 (Ind. 1988)]; [*Kondrup v. State*, 250 Ind. 320, 323, 235 N.E.2d 703, 705 (1968)]. The inference of intent must not derive from or be supported by the inference of breaking and entering. In other words, the evidence must support each inference—felonious intent and breaking and entering—independently, and neither inference should rely on the other for support. This is not to say, however, that the same piece of evidence cannot support both inferences.
>
> Requiring independent evidence of intent is necessary to maintain the distinction between burglary and other criminal offenses involving property invasion such as criminal trespass, Ind. Code § 35-43-2-2, or residential entry, Ind. Code § 35-4-2-1.5. Permitting the felonious intent element to be inferred from the inference of breaking and entering would render the intent element meaningless and read it out of the statute. *See Faulkner v. State*, 260 Ind. 82, 87, 292 N.E.2d 594, 596 (1973) ("If the Legislature had intended to punish a breaking and entry by itself, as we have here, they would not have added the second element of specific intent. A reading of the statute clearly indicates that both elements are included.").

*Id*.

In support of his claim that the State failed to present sufficient evidence to prove that he intended to commit theft while inside the Church, Harmon relies on the Indiana Supreme Court's opinion in *Freshwater*, in which the Supreme Court held that while intent to commit a given felony may be inferred from the circumstances, some fact in evidence must point to

6

an intent to commit the specific felony. 853 N.E.2d at 943. The Supreme Court reversed the judgment of the trial court and overturned Freshwater's conviction finding that the evidence, which demonstrated that Freshwater used a screwdriver to break into a car wash but exited after an alarm sounded without taking or disturbing anything inside, was insufficient to prove that Freshwater intended to commit theft while inside the car wash. *Id*. at 944-45. Similarly, Harmon argues that, in the instant matter, the State failed to prove that he intended to commit theft upon entering the Church. We disagree.

The record indicates that Harmon gained access to the Church by breaking a window with either a brick or a large stone. Harmon placed cardboard over the broken glass and climbed through the window. Theodora testified that upon entering the Church immediately after Harmon had been apprehended, she noticed that certain furnishing had been rearranged and a stone statute depicting angels and a waterfall had been moved from its regular location and placed by the broken window. Dominique also testified that he noticed that a keyboard and a public address system had been moved from their normal locations and placed near the broken window. In addition, Pastor Smith testified that while he couldn't remember specifically whether certain items were out of place when he entered the Church approximately two days after Harmon was arrested, he noticed that a gold flower pot had been moved from its normal location.

The evidence further indicates that Harmon had two flashlights and two hand files in his jacket pocket when he was detained by Dominique and subsequently arrested by Officers Finley and Peckler. Officers Farrow and Peckler both testified that, in their experience as

7

police officers, these items are typically used during the course of a burglary by individuals when trying to break into a structure and steal something. Nothing in the record indicates that Harmon used either the flashlights or the hand files in gaining access to the Church, and one can reasonably infer that Harmon intended to use these tools as an aid to finding items that he wished to steal once inside the Church.

In light of witness testimony that certain furnishings had been rearranged and multiple items were moved from their normal locations and placed near the broken window combined with Harmon's possession of tools which Officers Farrow and Peckler both testified are typically used during the course of a burglary, we conclude that the evidence was sufficient to support the trial court's inference that Harmon intended to commit theft while inside the Church. Harmon's claim to the contrary effectively amounts to an invitation to reweigh the evidence, which, we will not do. *See Stewart*, 768 N.E.2d at 435.

The judgment of the trial court is affirmed.

ROBB, C.J., and BAKER, J., concur.