Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**JEFFREY G. RAFF**
Deputy Public Defender
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KYLE HUNTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DESHAUN RICHARDS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1211-CR-467 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Jr., Judge
Cause No. 02D06-1202-FB-30

**June 11, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

During the afternoon hours of February 10, 2012, Appellant-Defendant Deshaun Richards and another man robbed seventy-year-old Jimmie Adkins at gunpoint. Richards was subsequently charged with and convicted of Class B felony robbery and Class A misdemeanor carrying a handgun without a license. At sentencing, the trial court merged Richards's conviction for Class A misdemeanor carrying a handgun without a license into his conviction for Class B felony robbery. The trial court sentenced Richards to a term of twelve years, with ten years executed and two years suspended to probation. On appeal, Richards contends that the evidence is insufficient to sustain his conviction for Class B felony robbery and that the sentence imposed by the trial court is inappropriate in light of the nature of his offense and his character. Concluding that the evidence is sufficient to sustain Richards's conviction and that his sentence is not inappropriate, we affirm.

**FACTS AND PROCEDURAL HISTORY**

During the afternoon hours of February 10, 2012, seventy-year-old Adkins was outside working in the trunk of his vehicle. Adkins looked up from his work and noticed Richards and another man walking through a group of children that were getting off of the school bus. Adkins acknowledged the men before returning to his work.

A few moments later, the men approached Adkins from behind. Richards put a gun to Adkins's side and told Adkins, "[I]f you don't give me the money, I shoot you." Tr. p. 20. Adkins looked Richards in the face and said, "I can't, got no money." Tr. p. 16. Adkins observed Richards's "full" face before Richards instructed Adkins to "turn [his] head." Tr. pp. 23, 16. Adkins complied with this instruction. While Richards held Adkins at gunpoint,

the other man searched Adkins, taking a cell phone and a pack of cigarettes. As the men were leaving, the second man told Adkins, "[Y]ou can't call the police because I got the cell phone." Tr. p. 20.

After Richards and the other man left, Adkins notified police of the robbery. Adkins gave the investigating officer a detailed description of both Richards and the gun used in the robbery. With the help of other officers, the investigating officer subsequently located Richards, who matched the description given by Adkins. The investigating officer subsequently escorted Adkins to the location where Richards was found for the purpose of determining whether Adkins could identify Richards as the individual who had robbed him. Once at this location, police brought six men out, one by one. One of these men was Richards. Adkins recognized Richards and identified him as the man who had held him at gunpoint.

On February 16, 2012, the State charged Richards with Class B felony robbery.[1] On September 17, 2012, the State charged Richards with Class A misdemeanor carrying a handgun without a license.[2] A jury trial was conducted on October 4, 2012.

At trial, Adkins provided detailed descriptions of both Richards and the gun used during the robbery. These descriptions were consistent with the descriptions Adkins gave to the investigating officer shortly after the robbery occurred. In addition, Adkins again identified Richards as the man who had held him at gunpoint. Adkins also identified the

---

[1] Ind. Code § 35-42-5-1.
[2] Ind. Code §§ 35-47-2-1 and 35-47-2-23.

3

jacket that Richards was wearing at the time of the robbery, and the gun used during the commission of the robbery. Both of these items were recovered from the home in which Richards was found shortly after the robbery occurred.

At the conclusion of the presentation of the evidence, the jury found Richards guilty as charged. During the October 26, 2012 sentencing hearing, the trial court merged Richards's Class A misdemeanor carrying a handgun without a license conviction into his Class B felony robbery conviction. The trial court sentenced Richards to a term of twelve years of incarceration with two years suspended to probation. This appeal follows.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

Richards contends that the evidence is insufficient to sustain his conviction for Class B felony robbery.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on

reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002). Inconsistencies in witness testimony go to the weight and credibility of the testimony, "the resolution of which is within the province of the trier of fact." *Jordan v. State*, 656 N.E.2d 816, 818 (Ind. 1995).

Indiana Code section 35-42-5-1 provides, in relevant part, that a "person who knowingly or intentionally takes property from another person or from the presence of another person … while armed with a deadly weapon" commits Class B felony robbery. In challenging the sufficiency of the evidence presented at trial, Richards claims that the stress of the robbery coupled with the allegedly suggestive nature of the identification procedures used by police makes Adkins's identification of Richards unreliable. Specifically, Richards argues that the identification procedure utilized by police—which included showing Adkins six men, one of whom was Richards, one by one—was unduly suggestive because it indicated that the police believed that one of the individuals presented to Adkins had committed the robbery. Richards, however, does not present any authority supporting his claim that the procedure used by the police was unduly suggestive so as to make Adkins's identification of Richards unreliable, and the record indicates that Adkins's identification of Richards was certain and consistent at all times relevant to the instant appeal.

The record demonstrates that Adkins was able to identify Richards both shortly after the robbery took place and at trial, testifying that he saw Richards's "full face" on multiple

5

occasions before and during the robbery. Tr. p. 23. Adkins first saw Richards and the other man when he looked up from working on his vehicle and saw the men walking through a group of children as the children got off of a school bus. Adkins acknowledged the men before turning his attention back to his work. Soon thereafter, Adkins felt a gun "in [his] side" and heard Richards tell him to "give [him] money." Tr. p. 16. Adkins looked Richards in the face and said, "I can't, got no money." Tr. p. 16. Adkins got a good look at Richards's face before he complied with Richards's instruction for Adkins to "turn [his] head." Tr. p. 16.

After Richards and the other man left, Adkins notified police of the robbery. Adkins gave the investigating officer detailed descriptions of both Richards and the gun used during the robbery. The investigating officer subsequently escorted Adkins to the location where Richards, who, again, matched the description given by Adkins, was found. Once at this location, police brought six men, one of whom was Richards, out one by one. Adkins recognized Richards and identified Richards as the man who had held him at gunpoint.

Furthermore, at trial, Adkins provided detailed descriptions of both Richards and the gun used during the robbery. These descriptions were consistent with the descriptions Adkins gave to police shortly after the robbery occurred. Adkins again identified Richards as the man who had held him at gunpoint. He also identified the jacket that Richards was wearing at the time of the robbery and the gun used during the course of the robbery, both of which were recovered from the home in which Richards was found shortly after the robbery occurred.

Upon review, we conclude that the evidence most favorable to the jury's verdict demonstrates that Richards, while armed with a deadly weapon, knowingly or intentionally took property from Adkins. Nothing in the record indicates that Adkins's identification of Richards was unreliable or was influenced in any way by the allegedly incriminating identification procedures used by police. The record demonstrates that Adkins observed Richards's entire face multiple times, and his various identifications of Richards were certain and consistent. Richards's claim to the contrary amounts to an invitation to reweigh the evidence, which we will not do. *Stewart*, 768 N.E.2d 433 at 435.

## II. Appropriateness of Sentence

Richards also contends that the sentence imposed by the trial court is inappropriate in light of the nature of his offense and his character. In arguing that his sentence is inappropriate, Richards argues that his "twelve (12) year sentence with ten (10) years executed" should be reduced "to the advisory sentence of ten (10) years with six (6) years executed." Appellant's Br. p. 6. Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In analyzing such claims, we "'concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character.'" *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (quoting *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002),

7

*trans. denied*). The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

With respect to the nature of his offense, Richards acknowledges that armed robbery is a serious matter and that the armed robbery was traumatizing to the seventy-year-old victim. Richards, however argues that his offense does "not appear to be more aggravating than one would expect." Appellant's Br. p. 6. Adkins, however, testified that he was severely impacted by Richards's criminal acts, claiming that he was "scared to death" by Richards's actions. Tr. p. 22.

With respect to his character, Richards acknowledges that his criminal history includes four juvenile adjudications, two of which would have been felonies if committed by an adult. Richards nonetheless argues that his twelve-year sentence is inappropriate because he was only eighteen at the time he committed the instant offense, and the instant offense is his first adult conviction. The record demonstrates that Richards has an ongoing disregard for the law. This disregard for the law dates back to when Richards was eleven years old. Richards's prior juvenile adjudications include juvenile adjudications for actions which, if committed by an adult, would constitute Class C felony battery and Class D felony criminal trespass. His criminal history also includes two juvenile adjudications for actions which, if committed by an adult, would constitute Class A misdemeanor carrying a handgun without a license. In addition, Richards's criminal behavior appears to be escalating in nature, and several of his criminal actions include the possession and/or use of a firearm.

In summary, Richards robbed a seventy-year-old man at gunpoint. The victim was

traumatized by Richards's actions. Richards's criminal record and his instant actions demonstrate a propensity to carry a handgun without a license and to use the handgun in the commission of other criminal acts. His criminal behavior also appears to be escalating in nature. In light of these facts, we cannot say that Richards's twelve-year sentence is inappropriate.

The judgment of the trial court is affirmed.

RILEY, J., and BROWN, J., concur.