## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 20 2016, 9:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

T. Andrew Perkins
Peterson Waggoner & Perkins, LLP
Rochester, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joseph Esposito,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | June 20, 2016<br><br>Court of Appeals Case No.<br>25A03-1512-CR-2237<br><br>Appeal from the Fulton Superior Court<br><br>The Honorable Wayne E. Steele, Judge<br><br>Trial Court Cause No.<br>25D01-1304-FC-206 |

**Bradford, Judge.**

# Case Summary

On September 30, 2012, Appellant-Defendant Joseph Esposito entered the residence of Cathy Neises and stole Neises's purse. When Neises struggled with Esposito in an attempt to retain possession of her purse, Esposito threatened to harm her if she continued to fight back. Following the struggle, Esposito ran out of Neises's residence with her purse. Appellee-Plaintiff the State of Indiana (the "State") subsequently charged Esposito with Class C felony robbery. Esposito was found guilty as charged following a jury trial. On appeal, Esposito contends that the evidence is insufficient to sustain his conviction. Concluding otherwise, we affirm.

## Facts and Procedural History

On September 30, 2012, Esposito asked Matthew Henning if he could borrow Henning's truck. In asking to borrow Henning's truck, Esposito explained that he needed to drive to Rochester to retrieve money that someone owed him. Henning did not want to allow Esposito to take his truck, but agreed to go with Esposito to Rochester. Later that day, Esposito, Henning, drove together to Rochester with their friend, Donovan Ward, and Esposito's fiancée, Taylor Lawson, in Henning's maroon Ford F150 truck.

Once the group arrived in Rochester, Esposito asked to stop at a local Walmart. While at Walmart, Esposito bought a camouflage mask. Upon leaving Walmart, Esposito, who at that time was driving the truck, drove to a local trailer park and parked across the street from Neises's residence. Neises had known Ward for years and had previously lived a few residences down from

her. Neises also knew Esposito because he had previously come to her residence with some of her neighbors. Neises did not know Esposito's last name, but knew that his first name was "Joe." Tr. p. 141. After Esposito parked, Henning, Ward, and Lawson remained in the truck as Esposito exited the truck, placed the mask on top of his head, and walked to Neises's residence.

[4] When Esposito entered, Neises was resting on the couch in her living room with her back to the door. She had left the interior front door open because it was a nice day, but the screen door was closed. When Neises heard the screen door open, she did not react immediately because she "just thought it was the wind blowing the door." Tr. p. 139. She then felt someone at her back. Neises tried to fight the intruder but was told to "[s]top fighting or I'll hurt you." Tr. p. 139.

[5] Both Esposito and Neises then reached for Neises's purse, which was sitting on the end of the couch. Esposito and Neises struggled over the purse. Neises attempted to stand and to remove Esposito's mask, but only managed to pull and break his necklace. During the struggle, Esposito pulled Neises off the couch onto the floor and dragged her across the floor. Ultimately, the purse strap broke, Neises lost her grip on the purse, and Esposito ran out of Neises's residence with the purse. Neises attempted to chase after Esposito and saw him get into an older red Ford pickup truck that was parked across the street. At the time it was taken, Neises's purse contained approximately $1400 in cash. Neises's purse also contained her wallet, identification, checkbook, makeup, and various other items.

[6] Upon returning to the truck, Esposito instructed his friends to keep quiet and not to talk about what had happened. The group then went to the home of Esposito's cousin, Dena Myers, where Esposito and Lawson were living at the time. When Myers arrived home later that day, she observed that Esposito and his friends seemed to be in a good mood.

[7] Esposito told Myers that the group had gone to Rochester and that he had entered a woman's residence and stolen her purse. Esposito stated that he had obtained a lot of cash and pills from a woman named "Cat."[1] Tr. p. 184. Esposito further stated that he had bought a mask at Walmart beforehand. Myers observed the purse and saw that it contained approximately $1000 in cash, identification, makeup, and a prescription pill bottle. Myers looked at the pill bottle and saw that it was labeled with the name Cathy. A few weeks later, Myers found the mask in a box of Esposito's belongings that he had left at her house. Myers subsequently provided the mask to the police.

[8] On April 4, 2013, the State charged Esposito with Class C felony robbery. A jury trial commenced on October 14, 2015. During trial, Neises testified that she recognized Esposito during the robbery and identified him in court as the perpetrator. Neises testified that she recognized Esposito's voice, hair, clothing, and the necklace he was wearing. She described his distinctive clothing style of choice and the length and style of his "bleached blonde" hair for the jury. Tr. p.

---

[1] The record reveals that Neises sometimes went by the nickname "Cat." Tr. p. 157.

141. Neises indicated that in light of these identifying factors, she recognized the perpetrator as the person she knew as "Joe" even though he wore a mask during the robbery. Tr. p. 141. She described the mask as resembling a zebra, like the Rochester high school's mascot.[2]

[9] In addition, Ward and Henning both testified at trial that they accompanied Esposito to Rochester, that they observed Esposito enter Neises's residence, and that Esposito ran out of the residence wearing a camouflage mask. Ward testified that Esposito purchased the mask used during the commission of the robbery at Walmart beforehand and that the mask presented by the State at trial looked like the mask that Esposito had purchased at Walmart. Myers also identified the mask at trial as the mask that Esposito claimed to have used during the robbery and that she found among his belongings in her home afterwards. The mask was admitted into evidence as State's Exhibit 11 and was displayed for the jury.

[10] Following trial, the jury found Esposito guilty as charged. The trial court subsequently sentenced Esposito to a term of eight years, with five years executed and three years suspended to probation. This appeal follows.

# Discussion and Decision

---

[2] Review of the record reveals that although made of a camouflage-like colors, the mask worn by Esposito during the robbery contains markings which could reasonably be described as resembling a zebra. *See* State's Ex. 11.

# A. Sufficiency of the Evidence

[11] Esposito contends that the evidence is insufficient to sustain his conviction for Class C felony robbery.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict could be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

[12] In order to convict Esposito of Class C felony robbery, the State was required to prove that he knowingly or intentionally took property "from another person or from the presence of another person: (1) by using or threatening the use of force

on any person; or (2) by putting any person in fear." Ind. Code § 35-42-5-1. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 34-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

[13] Review of the record demonstrates that five different witnesses—including the the victim, the three individuals who accompanied Esposito to the scene of the robbery, and Myers, the individual to whom Esposito admitted that he committed the robbery—testified that Esposito committed the robbery in question. Neises testified that during the commission of the robbery, Esposito threatened to "hurt" her if she did not stop fighting with him. Tr. p. 139. Myers testified that she observed Esposito with a purse, cash, and a pill bottle which had the victim's first name on it shortly after Esposito admitted that he had committed the robbery. Myers further testified that she subsequently found the mask which Esposito claimed to have worn during the commission of the robbery among Esposito's personal belongings. Myers turned the mask over to police and the mask was admitted into evidence during trial. Upon review, we conclude that the evidence is sufficient to sustain the jury's guilty finding.

## B. Incredible Dubiosity Rule

[14] Esposito further contends that the evidence should be found insufficient to sustain his conviction because Neises's testimony should have been found unreliable under the incredible dubiosity rule. The Indiana Supreme Court has

held that the incredible dubiosity rule applies only in situations "'where a *sole witness* presents inherently contradictory testimony which is equivocal or the result of coercion and there is a *complete lack of circumstantial evidence* of the appellant's guilt.'" *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015) (quoting *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994)) (emphases in *Moore*). Here, the State did not rely on the testimony of a single witness in presenting its case against Esposito, but rather on the testimony of five different witnesses. One of the five witnesses was the victim of Esposito's crime, three accompanied him during the commission of the crime, and Esposito admitted to the fifth that he had committed the crime.

[15] Furthermore, although these witnesses' testimony contained slight variations about (1) the design of the mask worn by Esposito during the robbery, (2) when Esposito put the mask on, and (3) whether Neises chased after the truck when Esposito left the scene of the crime, all five witnesses unequivocally testified that Esposito carried out the robbery in question. Their testimony was also corroborated by the discovery of the mask used during the commission of the crime among Esposito's belongings. Given that the incredible dubiosity rule only applies in situations where a sole witness presents inherently contradictory evidence coupled with the fact that five witnesses consistently testified that Esposito committed the charged offense and their testimony was corroborated by other evidence at trial, we conclude that the incredible dubiosity rule does not apply to the instant matter. The evidence is sufficient to sustain Esposito's conviction for Class C felony robbery.

[16]     The judgment of the trial court is affirmed.

Bailey, J., and Altice, J., concur.