## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 10 2018, 8:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Richard J. Thonert
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Devin Combs,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 10, 2018<br><br>Court of Appeals Case No.<br>17A-CR-3059<br><br>Appeal from the Noble Circuit Court<br><br>The Honorable Michael J. Kramer, Judge<br><br>Trial Court Cause No.<br>57C01-1603-F4-14 |

**Bradford, Judge.**

# Case Summary

[1] Devin Combs was convicted of Level 4 felony dealing in methamphetamine after he was caught fleeing a residence where law enforcement found evidence of the manufacture of the drug. On appeal, Combs challenges the sufficiency of the evidence to sustain his conviction. We affirm.

# Facts and Procedural History

[2] On March 21, 2016, law enforcement officers in Noble County went to a residence and attempted to serve two warrants on Combs. Lora Gage owned the residence and was known to associate with Combs. Prior to serving the warrants, the officers formed a perimeter around the residence. When the officers were in place, Officer James Sheffield knocked on the front door of the residence. D.C., the seventeen-year-old son of Gage, answered the door and invited Officer Sheffield inside. Once inside, Officer Sheffield could smell chemicals that he knew to be associated with the production of methamphetamine. Officer Sheffield asked Gage whether Combs was present in the residence and Gage indicated that he was not. Officer Sheffield observed that D.C. made "a frantic [gesture] with his head" toward a crawl space under the main floor of the house and had "a frightened look" when he inquired about Combs. Tr. Vol. II, p. 29.

[3] The smell emanating from the residence led Officer Sheffield to fear for the safety of the occupants so he "had everybody exit the … residence." Tr. Vol. II,

p. 29. Officer Sheffield walked over to the "trap door to the crawl space" and opened the trap door. Tr. Vol. II, p. 30. After opening the trap door, "the odor became very very strong." Tr. Vol. II, p. 30. Officer Sheffield ordered "any person that was down there to come out" and a male juvenile and a female juvenile exited the crawl space. Tr. Vol. II, p. 30. As the juveniles were exiting the crawl space, Officer Sheffield was notified by radio that Combs "had exited the crawl space from a window … and was apprehended … trying to flee the property from the rear." Tr. Vol. II, p. 31.

[4] A subsequent search revealed numerous items associated with manufacturing methamphetamine hidden in the crawl space. These items included: (1) a bottle containing chemicals used to produce methamphetamine via the "one pot" method, (2) coffee filters, (3) drain cleaner, (4) a glass smoking pipe, (5) burned lithium battery strips and AA batteries, (6) a baggie containing a white powdered substance that tested positive for methamphetamine, (7) cold packs, and (8) a backpack marked with an abbreviated version of Combs's name. Tr. Vol. II, p. 73. The backpack contained various tools and supplies used to manufacture methamphetamine.

[5] On March 22, 2016, the State charged Combs with Level 4 felony dealing in methamphetamine. A bench trial was conducted on November 7, 2017, after which Combs was found guilty as charged. The trial court subsequently sentenced Combs to a ten-year term with eight years executed and two years suspended to probation.

# Discussion and Decision

[6] Combs contends that the evidence is insufficient to sustain his conviction for Level 4 felony dealing in methamphetamine.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original).

[7] At the time Combs committed the charged conduct, Indiana Code section 35-48-4-1.1 provided as follows:

> (a) A person who:
>     (1) knowingly or intentionally:
>         (A) manufactures;

          (B) finances the manufacture of;
          (C) delivers; or
          (D) finances the delivery of;
      methamphetamine, pure or adulterated; or
     (2) possesses, with intent to:
          (A) manufacture;
          (B) finance the manufacture of;
          (C) deliver; or
          (D) finance the delivery of;
      methamphetamine, pure or adulterated;
   commits dealing in methamphetamine, a Level 5 felony, except
   as provided in subsections (b) through (e).

The offense was a Level 4 felony if "(1) the amount of the drug involved is at least one (1) gram but less than five (5) grams; or (2) the amount of the drug involved is less than one (1) gram and an enhancing circumstance applies." Ind. Code § 35-48-4-1.1(c).

[8] The evidence indicates that Gage initially lied to police and indicated that Combs was not present in the residence. Combs, however, was apprehended by police as he attempted to flee the crawl space through a window. The crawl space contained numerous items used in the "one pot" method for manufacturing methamphetamine and a backpack marked with an abbreviated version of Combs's first name. The backpack also contained numerous items used during the manufacturing process. We conclude that the above-described evidence is sufficient to sustain Combs's conviction for Level 4 felony dealing in methamphetamine. *See Montgomery v. State*, 22 N.E.3d 768, 781–82 (Ind. Ct. App. 2014) (providing that evidence that the defendant was in possession of numerous items used in the manufacture of methamphetamine and attempted

to flee when approached by law enforcement was sufficient to sustain the defendant's conviction for manufacturing methamphetamine). Combs's claim to the contrary effectively amounts to an invitation to reweigh the evidence, which we will not do. *See Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002) (providing that upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses).

[9] The judgment of the trial court is affirmed.

Baker, J., Kirsch, J., concur.