## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Sep 23 2015, 9:28 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Ellen M. O'Connor<br>Marion County Public Defender Agency<br>Indianapolis, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Tyler G. Banks<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles Arnold,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | September 23, 2015<br><br>Court of Appeals Case No.<br>49A05-1503-CR-110<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Shatrese M. Flowers, Judge<br>The Honorable Peggy Hart, Commissioner<br><br>Trial Court Cause No.<br>49G20-1408-F4-38278 |

**Bradford, Judge.**

# Case Summary

[1] Appellant-Defendant Charles Arnold engaged in an argument with Cynthia Bell during the early morning hours of August 4, 2014. Arnold interfered when Bell approached Eddie Williams and asked for assistance. Despite Arnold's threatening demeanor, Williams helped Bell get away from Arnold. A few hours later, Arnold spotted Williams, who had fallen asleep in his vehicle. Arnold, in an aggressive and threatening manner, demanded that Williams tell him where he had taken Bell. As Williams attempted to flee from Arnold, Williams heard two gunshots. Immediately after Williams heard the gunshots, he noticed that something had shattered the back window of his vehicle and punctured his left rear tire.

[2] Appellee-Plaintiff the State of Indiana (the "State") subsequently charged Arnold with a number of crimes, including unlawful possession of a firearm by a serious violent felon, a Level 4 felony, and attempted battery by means of a deadly weapon, a Level 5 felony. Following a jury trial, Arnold was found guilty as charged. On appeal, Arnold challenges the sufficiency of the evidence sustaining his convictions for unlawful possession of a firearm by a serious violent felon and attempted battery by means of a deadly weapon. We affirm.

# Facts and Procedural History

[3] On the morning of August 4, 2014, Arnold and Cynthia Bell engaged in an argument. During the course of the argument, Bell "slashed" Arnold's tires and

Arnold called the police. State's Ex. 35-A, 5:44-5:50. At some point, Bell left the scene and approached a white SUV which was being driven by Eddie Williams. Williams observed that Bell appeared to be "distressed" and appeared to be "trying to get away from [ ] Arnold." Tr. p. 49.

[4] After Williams agreed to give Bell a ride, Arnold "jumped" in front of Williams's vehicle to try to block the vehicle's exit route. Tr. p. 50. Williams then "gunned [his] vehicle[,]" causing Arnold to move from the vehicle's path. Tr. p. 51. As Williams drove away, he observed Arnold "thr[o]w his hand behind his back like [he was] going to draw a weapon." Tr. p. 51. Williams, however, did not actually see a weapon at this time. Williams gave Bell a ride to the intersection of 18th Street and Meridian Street.

[5] After dropping Bell off, Williams drove to Graceland Avenue between 36th and 37th Streets, where he feel asleep in his vehicle. Williams was subsequently awakened by Arnold yelling at him from the passenger seat of a burgundy Buick that was being driven by Cory Mills. At Arnold's request, Mills had stopped the Buick to the left of Williams's vehicle. Arnold exhibited a "threatening" demeanor as he questioned Williams about Bell. Tr. p. 54. Arnold was acting "real aggressive, wanting to know what [Williams] had did [sic] with [Bell]." Tr. p. 54. Believing that Arnold might be armed, Williams attempted to flee the encounter by pulling away from Mills's Buick. As he pulled away, Williams heard two gunshots. Immediately after Williams heard the gunshots, he noticed that something had shattered the back window of his vehicle and punctured his left rear tire. The bullet that shattered Williams's

back window came to rest in "the second seat headrest right behind [Williams's] head." Tr. p. 57. Williams proceeded to a nearby restaurant and reported the incident to the Indianapolis Metropolitan Police Department.

[6] Detective Stephen Fippen responded to Williams's call. After conducting an initial conversation with Williams, Detective Fippen transported Williams to Arnold's home which was located just north of the intersection of 36th Street and Kenwood Avenue. Once at Arnold's home, Williams identified Arnold as the individual whom he had encountered both when initially approached by Bell and when he was awakened in his vehicle and shot at. Based on the facts known to Detective Fippen coupled with Williams's identification of Arnold, Detective Fippen obtained a search warrant for Arnold's home.

[7] During a subsequent search of Arnold's home, Detective Fippen discovered a holster that would fit a "large model frame Smith and Wesson [.]40 caliber handgun." Tr. p. 202. In addition, investigating officers recovered two spent shell casings from the site of the shooting. These shell casings were in "pristine condition" when recovered, enabling the investigating officers to identify the casings from .40 caliber Smith and Wesson cartridges. Tr. p. 119. It was later determined that the only possible weapon that could have fired the shells was a Smith and Wesson firearm.

[8] On August 5, 2014, the State charged Arnold with Count I – unlawful possession of a firearm by a serious violent felon, a Level 4 felony; Count II – attempted battery by means of a deadly weapon, a Level 5 felony; Count III –

criminal recklessness, a Level 5 felony; and Count IV – possession of paraphernalia, a Class A misdemeanor. The trial court conducted a two-day jury trial on December 9-10, 2014. Following the conclusion of trial, the jury found Arnold guilty as charged. At sentencing, the trial court merged Counts II and III and sentenced Arnold to an aggregate twelve-year sentence. This appeal follows.

# Discussion and Decision

[9] Arnold contends that the evidence is insufficient to sustain his convictions for unlawful possession of a firearm by a serious violent felon and attempted battery by means of a deadly weapon.[1]

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The

---

[1] Arnold does not challenge the sufficiency of the evidence to sustain his conviction for Class A misdemeanor possession of paraphernalia.

> evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict could be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses, *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002), as the jury, acting as the trier-of-fact, is "'free to believe whomever they wish.'" *Klaff v. State*, 884 N.E.2d 272, 274 (Ind. Ct. App. 2008) (quoting *McClendon v. State*, 671 N.E.2d 486, 488 (Ind. Ct. App. 1996)).

[10] "[A] conviction may be based purely on circumstantial evidence." *Hayes v. State*, 876 N.E.2d 373, 375 (Ind. Ct. App. 2007) (citing *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995)), *trans. denied*. "'On appeal, the circumstantial evidence need not overcome every reasonable hypothesis of innocence.'" *Id.* (quoting *Moore*, 652 N.E.2d at 55). "It is enough if an inference reasonably tending to support the conviction can be drawn from the circumstantial evidence." *Id.* (citing *Moore*, 652 N.E.2d at 55). Thus, where circumstantial evidence is used to establish guilt, "'the question for the reviewing court is whether reasonable minds could reach the inferences drawn by the jury; if so, there is sufficient evidence.'" *Klaff*, 884 N.E.2d at 274-75 (quoting *Maxwell v. State*, 731 N.E.2d 459, 462 (Ind. Ct. App. 2000)).

[11] Furthermore, "[e]ven though one's mere presence at the crime scene with the opportunity to commit a crime is not a sufficient basis on which to support a conviction, one's presence at the scene in connection with other circumstances tending to show one's participation may raise a reasonable inference of guilt." *Id*. at 275 (citing *Brink v. State*, 837 N.E.2d 192, 194 (Ind. Ct. App. 2005), *trans. denied*). For instance, a defendant's course of conduct before, during, and after the offense, may raise a reasonable inference of guilt. *Willis v. State*, 27 N.E.3d 1065, 1068 (Ind. 2015) (citing *Maul v. State*, 731 N.E.2d 438, 439 (Ind. 2000)).

## I. Unlawful Possession of a Handgun by a Serious Violent Felon

[12] Indiana Code section 35-47-4-5(c) provides that "[a] serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Level 4 felony." Arnold admitted below that he qualified as a serious violent felon. As such, he does not challenge the sufficiency of the evidence proving that he was a serious violent felon on appeal. Arnold merely challenges the sufficiency of the evidence to prove that he knowingly or intentionally possessed a firearm.

[13] In the instant matter, the evidence most favorable to the jury's finding of guilty demonstrates that Arnold exhibited threatening behavior toward Williams during two separate encounters. During Williams's first encounter with Arnold, Williams did not actually see a weapon, but saw Arnold "thr[o]w his hand behind his back like [he was] going to draw a weapon." Tr. p. 51. During the second encounter, Williams, who had fallen asleep in his vehicle, was

awakened by Arnold yelling at him. Arnold exhibited a "threatening" demeanor as he questioned Williams about Bell. Tr. p. 54. Arnold was acting "real aggressive, wanting to know what [Williams] had did [sic] with [Bell]." Tr. p. 54. Because he believed from their earlier encounter that Arnold might be armed, Williams attempted to flee the encounter by pulling away from Arnold. As he pulled away, Williams heard two gunshots. Immediately after Williams heard the gunshots, he noticed that something had shattered the back window of his vehicle and punctured his left rear tire. The bullet that shattered Williams's back window came to rest in "the second seat headrest right behind [Williams's] head." Tr. p. 57.

[14] Further, while Mills testified at trial that he did not see Arnold with a gun on the day in question, the State attempted to impeach Mills by casting Mills's credibility into doubt. In impeaching Mills, the State questioned him about his prior statement to Detective Fippen that he watched as Arnold "came out of his back pocket with a gun and started shooting." Tr. p. 73. The jury, acting as the trier of fact, was in the best position to judge Mills's credibility and to decide whether to believe Mills's trial testimony. *See Stewart*, 768 N.E.2d 435; *Klaff*, 884 N.E.2d at 274.

[15] We conclude that the evidence is sufficient to allow the jury to reasonably infer Arnold's guilt. Arnold's claim to the contrary is effectively an invitation to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

## II. Attempted Battery by Means of a Deadly Weapon

[16] Indiana Code sections 35-42-2-1(b)(1) provides that a person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is a Level 5 felony if it is committed with a deadly weapon. Ind. Code § 35-42-2-1(f)(2). Furthermore, "[a] person attempts to commit a crime when, acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime." Ind. Code § 35-41-5-1(a). "An attempt to commit a crime is a felony or misdemeanor of the same level or class as the crime attempted." Ind. Code § 35-41-5-1(a).

[17] As is discussed above, the evidence most favorable to the jury's finding of guilt demonstrates that Williams was awakened by Arnold yelling at him. Arnold exhibited a "threatening" demeanor as he questioned Williams about Bell. Tr. p. 54. Arnold was acting "real aggressive, wanting to know what [Williams] had did [sic] with [Bell]." Tr. p. 54. When Williams attempted to flee the encounter, Williams heard two gunshots. Immediately after Williams heard the gunshots, he noticed that something had shattered the back window of his vehicle and punctured his left rear tire. The bullet that shattered Williams's back window came to rest in "the second seat headrest right behind [Williams's] head." Tr. p. 57. The evidence demonstrates that the trajectory of the cartridges recovered form Williams's vehicle was consistent with the gun being fired by Arnold and the record is devoid of any indication that there was

some other individual present at the scene that could have shot the gun in the direction of Williams's vehicle.

[18] We conclude that the evidence is sufficient to allow the jury to reasonably infer Arnold's guilt. Arnold's claim to the contrary is effectively an invitation to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

[19] The judgment of the trial court is affirmed.

May, J., and Crone, J., concur.