## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 15 2017, 9:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sean P. Hilgendorf
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Dequan Rainous Estelle,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

December 15, 2017

Court of Appeals Case No.
71A03-1707-CR-1722

Appeal from the St. Joseph
Superior Court

The Honorable Jeffrey L. Sanford,
Judge

Trial Court Cause No.
71D03-1607-F3-43

**Bradford, Judge.**

# Case Summary

[1] On the evening of May 24, 2016, Jason Barksdale was shot while riding his bicycle in South Bend. As a result of being shot, Barksdale suffered serious injuries and his left leg had to be amputated. Barksdale identified Appellant-Defendant Dequan Rainous Estelle as the individual who had shot him.

[2] Appellee-Plaintiff the State of Indiana ("the State") subsequently charged Estelle with one count of Level 3 felony aggravated battery and one count of Level 5 felony battery by means of a deadly weapon. Estelle was found guilty as charged following a three-day jury trial. The trial court entered a judgment of conviction on the Level 3 felony aggravated battery charge. However, due to double jeopardy concerns, the trial court dismissed the Level 5 battery charge. On July 12, 2017, the trial court sentenced Estelle to a twelve-year executed term of imprisonment.

[3] On appeal, Estelle challenges the sufficiency of the evidence to sustain his conviction for Level 3 felony aggravated battery. Specifically, Estelle argues that the evidence is insufficient to sustain the jury's determination that he was the individual who shot Barksdale. Because we conclude otherwise, we affirm.

# Facts and Procedural History

[4] On the evening of May 24, 2016, nineteen-year-old Barksdale was riding his bicycle northbound along Wilber Street in South Bend. While riding his bicycle, he observed a car traveling southbound on Wilber Street. Barksdale

noticed that Tyaire Bryson was driving the car, Estelle was sitting in the front passenger seat, and Santori Dorsey was sitting in the backseat. Barksdale recognized the three men because they had all attended the same middle school.

[5] Upon seeing Dorsey, Barksdale made a hand gesture which communicated his disrespect for the Gangster Disciples gang. Barksdale believed that Dorsey was a member of Four Corner Hustler, a rival gang of the Gangster Disciples gang, and thought "it was something that they two [of them] would agree on[.]" Tr. Vol. II, p. 62. Barksdale then continued on his way until "something told [him] to turn around." Tr. Vol. II, p. 63.

[6] When he turned around, Barksdale noticed that the car carrying Bryson, Estelle, and Dorsey had changed direction and was now following him. Bryson pulled up alongside Barksdale and, through the open front passenger-side window, asked Barskdale "[w]hat did you say?" Tr. Vol. II, p. 63. In reply, Barksdale "dropped [the disrespectful sign] again." Tr. Vol. II, p. 64. Estelle then fired three shots at Barksdale before Bryson drove away from the scene.

[7] Soon thereafter, South Bend Police Officer Jarvier Bourne was dispatched to the scene of the shooting. By the time Officer Bourne arrived at the scene, a crowd had gathered around Barksdale, who was unconscious. Officer Bourne and others were eventually able to resuscitate Barksdale. After being resuscitated but before being transported to the hospital, Barksdale identified Estelle and Bryson as the responsible parties.

[8] Later that evening, Elkhart Police located the car that Bryson had been driving. Estelle's school work was found in the car. In addition, two bullet casings were recovered from the car. The first was "located on the floorboard of the front passenger seat." Tr. Vol. III, p. 58. The second was recovered from the track of the passenger seat. Investigating officers also recovered a third bullet casing from the scene of the shooting.

[9] A few weeks later, on June 10, 2016, officers recovered a handgun from a car in which Dorsey was riding. Subsequent testing of the handgun revealed that the handgun was the gun that had been used in the May 24, 2016 shooting.

[10] In light of certain social media posts which depicted Estelle displaying the Gangster Disciples hand signal, Jennica Benitez believed that Estelle was a member of the gang. At some point after the shooting, Benitez, who had previously dated Estelle, called Estelle. During their ensuing conversation, Benitez asked Estelle "why he was out here shooting people[.]" Tr. Vol. III, p. 15. Estelle replied that Barksdale had indicated disrespect for the Gangster Disciples by dropping the gang's sign. Estelle also indicated that Barksdale "looked like he was fix'n to grab something from his waist so then [I] shot him." Tr. Vol. III, p. 15.

[11] Due to the severity of his injuries, Barksdale remained hospitalized for just over one month. After being admitted to the hospital, Barksdale was placed in the Intensive Care Unit. He initially had to be fed through a tube because he could not eat. He suffered kidney failure and required dialysis and blood transfusions.

He also required a bowel reconstruction surgery. In addition, because a bullet hit the main artery in his leg, Barksdale's left leg had to be amputated. Also, as of the date that Barksdale testified at Estelle's trial, there was still a bullet lodged in his pelvis.

[12] On July 28, 2016, the State charged Estelle with one count of Level 3 felony aggravated battery and one count of Level 5 felony battery by means of a deadly weapon. A jury trial commenced on May 30, 2017. During trial, Barksdale testified that he was "110 percent" sure that Estelle was the individual who had shot him. Tr. Vol. II, p. 73. Also during trial, Benitez testified that Estelle had admitted to her that he had shot Barksdale. On June 1, 2017, the jury found Estelle guilty as charged. The trial court entered a judgment of conviction on the Level 3 felony aggravated battery charge. However, due to double jeopardy concerns, the trial court dismissed the Level 5 battery charge. On July 12, 2017, the trial court sentenced Estelle to a twelve-year executed term of imprisonment. This appeal follows.

# Discussion and Decision

[13] Estelle contends that the evidence is sufficient to sustain his conviction for Level 3 felony aggravated battery. Specifically, Estelle argues that the evidence is insufficient to prove that he was the individual who shot Barksdale.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess

witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146–47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

[14] In order to prove that Estelle committed Level 3 felony aggravated battery, the State was required to prove that Estelle "knowingly or intentionally inflict[ed] injury on a person that create[d] a substantial risk of death or cause[d] … protracted loss or impairment of the function of a bodily member or organ." Ind. Code § 35-42-1-1.5. Estelle does not dispute on appeal that Barksdale was shot by a gun or that as a result of being shot, Barksdale suffered loss of a bodily organ as his left leg had to be amputated. Estelle merely challenges the sufficiency of the evidence to prove his identity as the shooter.

[15]  Review of the record reveals that Barksdale has consistently identified Estelle as the shooter.  On the night of the shooting, after Officer Bourne had arrived on the scene and resuscitated Barksdale, Barksdale indicated that Estelle and Bryson had "done this to him."  Tr. Vol. II, p. 33.  At trial, Barksdale consistently identified Estelle as the shooter, stating that he was "110 percent" sure that Estelle was the person who shot him.  Tr. Vol. II, p. 73.  In addition to Barksdale's identification of Estelle as the shooter, Estelle admitted to Benitez that he had shot Barksdale.

[16]  Upon review, we conclude that the testimony of Officer Bourne, Barksdale, and Benitez is sufficient to sustain the jury's determination that Estelle was the individual who shot Barksdale.  Estelle's argument to the contrary amounts to nothing more than an invitation for this court to reweigh the evidence, which we will not do.  *See Stewart*, 768 N.E.2d 433, 435.  Accordingly, we affirm Estelle's conviction for Level 3 aggravated battery.

[17]  The judgment of the trial court is affirmed.

Robb, J., and Crone, J., concur.