## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 24 2018, 7:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew M. Kubacki
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Keijuan Ramey,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 24, 2018

Court of Appeals Case No.
49A02-1711-CR-2699

Appeal from the Marion Superior Court

The Honorable Bradley Keffer, Judge Pro Tempore

The Honorable Marshelle D. Broadwell, Magistrate

Trial Court Cause No.
49G17-1708-CM-32073

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Keijuan Ramey (Ramey), appeals his conviction for Counts I and II, domestic battery, Class A misdemeanors, Ind. Code § 35-42-2-1.3(a).

We affirm.

# ISSUE

Ramey presents one issue on appeal, which we restate as: Whether the State presented sufficient evidence beyond a reasonable doubt to support Ramey's domestic battery convictions.

# FACTS AND PROCEDURAL HISTORY

On August 25, 2017, Ramey and his eight-month pregnant girlfriend, Bricia Chaves (Chaves), were in an apartment leased by Ramey's sister, Shalika Parcher (Parcher). At some point, Chaves and Ramey walked into Parcher's bedroom, and Parcher sensed that Ramey was "mad about something." (Transcript Vol. II, p. 49). Chaves then stated that she needed to go home, and she borrowed Parcher's cellphone to contact her sister who would arrange for "an Uber home." (Tr. Vol. II, p. 50). While talking on the phone, Ramey snatched the phone from Chaves. Ramey then paced back and forth in the living room, hurling insults and threats to Chaves' sister. Because Parcher "didn't want [Ramey] to break" her phone, she took it back. (Tr. Vol. II, p. 50). At that point, Ramey was "yelling and screaming." (Tr. Vol. II, p. 50). Parcher ordered Ramey to leave and she threatened to call the police. Ramey

refused, and he angrily threw his own phone against the wall. Annoyed by Ramey's conduct, Parcher began pushing Ramey out of her apartment. Ramey refused and stated, "If I'm leaving, then [Chaves is] leaving with me." (Tr. Vol. II, p. 52). Ramey then "yanked [Chaves] by the back of the neck and tried to push [Chaves] out of the door, but [Chaves] knelt down because she didn't want" to leave. (Tr. Vol. II, p. 52). Upon seeing Ramey's actions, Parcher "panicked and she tried to get [Ramey] off of [Chaves,]" but Ramey turned around, swung his arm, and hit Parcher on her shoulder. (Tr. Vol. II, p. 53). Although he left Parcher's house, Ramey was later arrested.

On August 30, 2016, the State filed an Information, charging Ramey with Counts I and II, domestic battery, Class A misdemeanors. On November 2, 2017, a bench trial was conducted. At the close of the evidence, the trial court found Ramey guilty as charged. The same day, the trial court sentenced Ramey to serve concurrent terms of 365 days on each Count in the Marion County Jail. However, the trial court suspended 351 days to probation on both Counts.

Ramey now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Ramey contends that the State did not present sufficient evidence beyond a reasonable doubt to support his convictions for domestic battery. When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the judgment. *Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007). It

is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id*. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. *Id*. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id*. The evidence is sufficient if an inference may reasonably be drawn from it to support the judgment. *See id*. Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

[8] Indiana Code section 35-42-2-1.3(a) provides, in pertinent part, that "a person who knowingly or intentionally: (1) touches a family or household member in a rude, insolent, or angry manner; or (2) in a rude, insolent, or angry manner places any bodily fluid or waste on a family or household member . . . commits domestic battery, a Class A misdemeanor."

[9] In Count I, the State alleged that "Ramey did knowingly touch Bricia Chavez, a family or household member, in a rude, insolent or angry manner by grabbing her and/or pushing her and/or pulling her." (Appellant's App. Vol. II, p. 16). Here, Ramey claims that while "there is a high probability" that he touched Chaves, "the touching does not rise to the level of rude, insolent or angry as necessary for the conviction." (Appellant's Br. p. 11).

[10] On the day in question, Chaves and Ramey were arguing. When Chaves used Parcher's cell phone to call her sister who would arrange for an Uber to take her home, Ramey became furious. Ramey, who was "already livid . . . snatched the phone" from Chaves, and he began hurling threats and insults at Chaves' sister. (Tr. Vol. II, p. 50). Because Parcher "didn't want [Ramey] to break" her phone, she took it back. (Tr. Vol. II, p. 50). At that point, Ramey was "yelling and screaming," and Parcher ordered Ramey to leave and threatened to call the police. (Tr. Vol. II, p. 50). Ramey refused, and he angrily threw his own phone against the wall. Based on his appalling behavior, Parcher again ordered Ramey to leave her house. Ramey informed Parcher, "If I'm leaving, then [Chaves is] leaving with me." (Tr. Vol. II, p. 52). At that moment, Ramey "yanked [Chaves] by the back of her neck and [he] tried to push her out of the door, but [Chaves] knelt down because she didn't want to go." (Tr. Vol. II, p. 52). Ramey's arguments that Chaves offered an alternate explanation—that Ramey did not hold her neck in rude, insolent or angry manner—amount to an invitation to reweigh conflicting evidence, which we cannot do. *See Stewart*, 768 N.E.2d at 435.

[11] As for Count II, the State alleged that "Ramey did knowingly touch Shalika Parcher, a family or household member, in a rude, insolent or angry manner by striking her with his hand." (Appellant's App. Vol. II, p. 16). Ramey's only claim is that he did not knowingly hit Parcher. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b).

Parcher alleged that after Ramey "yanked" Chaves by "the back of her neck," she "panicked" and she "tried to get [Ramey] off of [Chaves]" because she "didn't know what [Ramey] was going to do next to [Chaves]." (Tr. Vol. II, p. 53). At that moment, Ramey turned around, swung his arm severally and "hit" Parcher on her "shoulder." (Tr. Vol. II, p. 54). Here, the factfinder could have reasonably inferred that Ramey was aware of a high probability that he would hit Parcher at the time he swung his arm.

In sum, we conclude that the State presented sufficient evidence beyond a reasonable doubt to convict Ramey of two Counts of domestic battery, Class A misdemeanors.

## CONCLUSION

For the reasons stated, we conclude that the evidence was sufficient to sustain Ramey's two Counts of Class A misdemeanor domestic battery.

Affirmed.

Vaidik, C. J. and Kirsch, J. concur